(98 South. 907)

### BROOKS v. BANK OF WETUMPKA.
(3 Div. 653.)

(Supreme Court of Alabama. Jan. 24, 1924. Rehearing Denied Feb. 14, 1924.)

**1. Chattel mortgages ⊕116—Description as covering property in a designated county, though followed by reference to all other property, held limited to property in county named.**

A mortgage on a printed form prepared by mortgagee bank, bearing the heading, "State of Alabama, Elmore County," covering mortgagor's property "situated in Elmore county, * * * to wit, all its live stock, wagons, * * * and all personal property of every kind and description," *held* not to cover property in another county, especially in view of the practical construction of the parties, and that another mortgage properly referred to property in such other county.

**2. Contracts ⊕155—Ambiguity construed most strongly against party preparing instrument.**

An instrument, if ambiguous, is construed most strongly against party preparing it or employing the words concerning which doubt arises.

**3. Contracts ⊕170(1)—Practical construction of parties given great weight, where instrument ambiguous.**

Where an instrument is ambiguous, the practical construction which the parties themselves have placed on it must be given great weight.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action for conversion by the Bank of Wetumpka against C. Ames Brooks. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

The contemporaneous construction placed upon a contract by the parties thereto is controlling of its meaning, when there is any sort of doubt. Bank v. Henry, 159 Ala. 391, 49 South. 97; 13 C. J. 546; 11 C. J. 498. The provisions of a printed form will be construed most strongly against the party who furnished the form. Piedmont v. Young, 58 Ala. 486, 29 Am. Rep. 770; Cont. Cas. Co. v. Ogburn, 175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377; Minge v. Green, 176 Ala. 350, 58 South. 381; Denson v. Caddell, 201 Ala. 194, 77 South. 720; Allen-West v. People's Bank, 74 Ark. 41, 84 S. W. 1041; Moorefield v. Fidelity Life Ins. Co., 135 Ga. 186, 69 S. E. 119.

Steiner, Crum & Weil, of Montgomery, Jas. W. Strother, of Dadeville, and Holley & Milner, of Wetumpka, for appellee.

A statement of location is but one of several elements of description in a personal property mortgage, and where the property is otherwise sufficiently described, it may be omitted, or, if erroneously stated, may be rejected as surplusage. 11 C. J. p. 465; Spaulding v. Mozier, 57 Ill. 148; 5 R. C. L. 424. In any event, as between the parties, an erroneous statement of the location will not affect its validity. Bonneviere v. Cole, 90 Wash. 526, 156 Pac. 527; Adamson v. Petersen, 35 Minn. 529, 29 N. W. 321.

GARDNER, J. The Dixie Industrial Company, a corporation, during the years 1914 to 1917, inclusive, owned certain real and personal property situated in Elmore and Tallapoosa counties. The corporation was engaged in various businesses. The larger portion of the farming operation was conducted during these years in Elmore county; the land lying, however, in one body, and extending into Tallapoosa county. The company owned and operated a railroad some 15 miles in length, situated entirely in Tallapoosa county, and in connection therewith used a locomotive, camp car, and three flat cars. There was also operated an oil mill situated in Tallapoosa county, in connection with which was used what is known as an Anderson expeller. The foregoing personalty —all of which was situated in the county of Tallapoosa, as above noted—together with other personalty referred to as "junk," and a few mules, were sold in the year 1919 by C. Ames Brooks, the defendant in this cause, who was president of the Dixie Industrial Company; the proceeds of such sale being placed to the credit of the corporation, and checked out in the course of business or in payment of its debts.

For the purpose of securing some old accounts due by the Dixie Industrial Company

to the Bank of Wetumpka, the said company by its president, the defendant here, executed four separate mortgages; the first bearing date of March 15, 1914, and the last May 26, 1917. Each of these mortgages embraced the crops in which the company was interested in Elmore county, Ala., with the exception of the mortgage of February 15, 1916, which was drawn to also embrace the crops in Tallapoosa county. These mortgages were in printed form, evidently prepared for its own use by the Bank of Wetumpka, and have been forwarded to this court for inspection. The name of the bank and the words Elmore county are printed in the mortgages throughout; each of the printed mortgages bearing the heading "State of Alabama, Elmore County," upon the face and back thereof.

By virtue of these mortgages the Bank of Wetumpka claims title to the property which was situated in Tallapoosa county and sold by the defendant. The court below reached the conclusion the property disposed of by the defendant was embraced in these mortgages, and rendered judgment accordingly in favor of the plaintiff, from which the defendant has prosecuted this appeal.

[1] The pivotal question here relates to the proper construction of the printed language of the mortgages given by the Dixie Industrial Company to the Bank of Wetumpka, with particular reference to the following portion thereof, contained in each of the mortgages:

"And also the following property, situated in Elmore county, Alabama, which belongs to it, and is free from all incumbrance, to wit: All its live stock, wagons, buggies, carts, farming implements, household and kitchen furniture, and all personal property of every kind and description which it now own or may hereafter acquire or in which it may have an interest, before the maturity of this mortgage, or before the full payment of the same."

It is insisted by counsel for appellant that the property here in question, not having been located in Elmore county, did not come within the language above quoted; while counsel for appellee insist that the words, "and all personal property of every kind and description which it now own or may hereafter acquire," are sufficiently broad and comprehensive, and should be construed so as to include property of any character wheresoever situated, and should not be controlled by the preceding limiting words "in Elmore county, Alabama."

[2] The proper construction of the language of these mortgages presents a matter of some doubt. There is a well-settled rule of construction that where a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. 13 C. J. 545; 2 Page on Contracts, § 1122; Allen-West Comm. Co. v. People's Bk., 74 Ark. 41, 84 S. W. 1041; Moorefield v. Fid.

Mut. Ins. Co., 135 Ga. 186, 69 S. E. 119; Mt. Vernon, etc., Co. v. Wolf Co., 188 Fed. 164, 110 C. C. A. 200; Hardy v. Ward, 150 N. C. 385, 64 S. E. 171. This rule of construction was recognized and given application by this court in Denson v. Caddell, 201 Ala. 194, 77 South. 720. See, also, in this connection, Minge v. Green, 176 Ala. 343, 58 South. 381.

[3] It is also insisted that in case of ambiguity, the practical construction which the parties themselves have placed upon the contract is to be given much weight. Jefferson Plumbers, etc., Co. v. Peebles, 195 Ala. 608, 71 South. 413; 13 C. J. 546. It is argued in this connection that the mortgages show they were promptly filed for record in Elmore county, Ala., but not in the county of Tallapoosa; and that in view of the fact the bank was, no doubt, well aware of the existence of this personal property in connection with the industrial operations of the company in Tallapoosa county, its failure to so record the mortgages in that county is strong evidence that the bank so construed them not to embrace the personalty so situated. The further fact the industrial company proceeded, through its officers, to make disposition of all of this personalty without the consent of the bank, indicated the mortgages were likewise so construed by the company as not embracing the property situated in Tallapoosa county.

As we have before noted, in each of the mortgages, except one, the crop conveyed was that situated in Elmore county only. After the description of the crop appears a semicolon, followed by the language above quoted, which begins "and also the following property situated in Elmore county, Alabama, * * * to wit." Then follows specific reference to certain designated personalty, as live stock, buggies," etc. The general description of "all personal property" is separated from the rest of the sentence by a comma.

It is clear that the preceding words, "in Elmore county, Alabama," are words of limitation as to the personal property specifically mentioned, such as the live stock, wagons, etc., above noted; and it could not be contended that live stock and wagons situated in etc., above noted; and it could not be concluded within this clause; and we are persuaded that these words of limitation also control the general language "all personal property," which follows. This is but a general description following a more particular one, all of which, in our opinion, is controlled by the limiting words "Elmore county" preceding. It is noted that when property located in Tallapoosa county was intended to be embraced [this with particular reference to the crops] this county was interpolated in writing therein.

Had the Bank of Wetumpka intended in this printed form to include property of the mortgagor located elsewhere than Elmore

county, all doubt could have easily been removed by the addition of the words "wheresoever located," or language of similar import. But this was not done, and we have reached the conclusion, in the light of the foregoing rules of construction, that the language of this mortgage, relied upon by the bank, is not to be construed as to embrace the property situated in Tallapoosa county.

We have examined the authorities relied upon by counsel for appellee, among them Bonneviere v. Cole, 90 Wash. 526, 156 Pac. 527, and Adamson v. Petersen, 35 Minn. 529, 29 N. W. 321; but as we read and understand these authorities it was held that the description therein involved was sufficient without regard to the designation of a false location of the property. We are of the opinion these authorities do not militate against the conclusion which we have here reached.

This cause was tried before the court without a jury, and is treated on this appeal as being entirely controlled by the construction to be placed upon the language in these mortgages, which we have herein quoted. As to this construction we are not in accord with the holding of the trial court, and the judgment will therefore be here reversed and one here rendered in favor of the defendant.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.